First case is U.S. v. Espinoza, Avalos, and Ledesma. Ready to proceed, counsel? Good morning, your honor. Alisa Soano-Peterson for Antonio Ledesma. I was speaking first because I have a case in the other courtroom. That's all right. We won't hold that against you. Thank you. So basically, we decided to allot the time by all of us not taking very much time because there's only a few points I'd like to make. I'd like to say a few words about the Booker safety valve issue. And the first thing to note is that in Booker, the Supreme Court stated that the sentencing guidelines were advisory. And they didn't make any exceptions to that. They just said that the guidelines were advisory. So that would include the guidelines regarding criminal history points. And when you consider that, I think the best way to interpret this is that the district court does have discretion to say that the criminal history points are overstated. And especially in light of the fact that since Booker, the courts are required to look at the other 3553 factors carefully and not just look at the sentencing guidelines. And part of that is looking at the characteristic of the defendant. And when you consider that — Didn't Judge Byrne state he looked at the 3553 factors? He may have, Your Honor. But what I'm saying as far as whether the overstatement of criminal history can be applied to the safety valve provisions, I think that when you consider the fact that the district court has to look at all the 3553 factors, I think the district court has discretion to say that criminal history is overstated. And there should not be an exception to that when you're talking about the safety valve provisions. Has any circuit ruled the way you suggest? I'm not aware of that. The answer is no, isn't it? I'm certainly not aware of it. Four or five circuits have spoken to this issue, the 10th, the 2nd, the 1st, the 11th. They've all said that Booker has no impact on this issue. Right. You'd like the Ninth Circuit to carve a different path? Well, the Ninth Circuit has in the past sometimes. So I believe that that would be the more reasoned viewpoint, is that if you have to look at all the 3553 factors, that there's no reason why the district court does not have discretion to say, well, yes, we calculated the criminal history points, but we don't have the guidelines advisory, and we can decide whether the criminal history is overstated, considering the characteristics of the defendant. Is there anything on this record that would suggest that if we did something like an amyline remand and asked Judge Byrne to re-sentence or decide whether to re-sentence on the idea that this is all discretionary now, that he would have sentenced differently, especially with regard to the safety valve? Well, he did say the criminal history was overstated. He did bring it down to a two. All you need is one, right? Pardon? All you need is one. Yeah, that's right. But then again, when he did that, you know, I don't think it was, you know, it was all settled how advisory the guidelines were. Therefore, it would make a difference. Well, Judge Byrne's no longer with us. Apparently not. He passed away. Right. You didn't know that? I've heard that, yes, I have. But anyway, and as far as the other issues on the sentencing entrapment and the special assessment, submit on the briefs unless the Court has questions. Thank you. And I'd like to reserve some time. Thank you. Good morning, Your Honor. Mike Meza on behalf of Mr. Avalos. My initial position was just to be to submit it on the brief. I felt that the issues probably were the issue that I raised specifically was resolved against us by Apprendi. But in response to Judge Hawkins' question of prior counsel, Judge Byrne's did not indicate that he felt that the mandatory minimum sentence was appropriate, specifically related to Mr. Avalos. Based on Mr. Avalos' involvement in the case, he received a minor role adjustment. Judge Byrne's granted him that. If he didn't say specifically, at least the tenor of Judge Byrne's statement was that he felt that 120 months was a little more than he would have given. I think he would have given the guideline sentence if the mandatory minimum had not been applicable in this case, and the guideline sentence was level 25 of the criminal history category of 4, which was, I think, 84 to 108, something like that, which was certainly less than the mandatory minimum. I believe that he would have felt that that was an appropriate sentence had it not been for the application of the mandatory minimum. And I'll submit it on that. Thank you. Thank you. Good morning, Your Honors. Elizabeth Newman for Mr. Espinoza. Just very briefly, again, on the Booker issue, I agree with the Court that there's no circuit that has yet found in favor of the position that we're united in presenting to the Court today, but I think that when you look at the case law that the other circuits have come out with, one of the main points that they seem to make again and again is that Section F cannot be advisory because there's nothing wrong with a judicial fact-finding mechanism that acts to lower a mandatory minimum sentence, and so Booker can't possibly apply. And I would just — I agree that Booker doesn't speak directly to an issue of calculation of criminal history, but I would point the Court to a particular paragraph or two paragraphs in Booker that do suggest that there may be a different point of view that is supported by Booker, and that's in Justice Breyer's remedial opinion, Section 4, where he's talking about why the Court has rejected the fix or a fix proposed by the government. Apparently, the government's proposed fix was to make the Guidelines advisory where the Constitution would forbid judicial fact-finding, that is, where the judicial fact-finding would act to raise a sentence, but not, according to the government's proposed fix, in cases in which the judicial fact-finding would act in other ways, that is to say, to lower the sentence. And Justice Breyer said, we don't believe, we do not believe that such one-way levers are compatible with Congress's intent. So it wasn't a constitutional issue at all, but only an issue of what would Congress had in — what would Congress have intended had it known that there was this constitutional problem. And it said, we believe that Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others, given the administrative complexities and so forth. And so I think that the page site for that? Yes, Your Honor. It's 543 U.S. at 266 to 267. And so when you're looking at an argument that other circuits have certainly relied on, that there's no Booker issue with a safety valve calculation because there's no constitutional judicial fact-finding problem with it, I think that the answer to that is to step back and to look at what Justice Breyer says the Court can consider Congress intended, or would have intended had it known that there was a constitutional problem with some portion or some aspect of judicial fact-finding. And so when you look at this case, what does as determined under the sentencing guidelines mean when you're looking at criminal history? It's not the case that anyone is really asking that the Court find this portion of or this aspect of as determined by the sentencing guidelines advisory for constitutional reasons, but merely because Congress would not have wanted a mandatory system to apply in some cases, like this one, and a nonmandatory system to apply in other cases. Congress can certainly establish offenses and systems in which some people may be included if they meet certain criteria, for better or worse, depending on what the system is, and some are excluded if they don't meet that criterion. But when Congress does it, when Congress did it in this case, it did it under a system in which that assumed that the guidelines were mandatory as to all defendants, and that system is no longer the system that we have. How do you deal with Labrada-Bustamante? I'm sorry, Your Honor? How do you deal with the case of Labrada-Bustamante? I'm sorry, Your Honor. Which case is that? It's 428F3-1252. It says Booker has no application to mandatory minimum sentences or reductions in sentences. And that, of course, is post-Booker. So we would to rule your way, we would not only have to fly in the face of four other circuits, we'd have to overrule an extant panel decision on the issue? I don't think so, Your Honor. I have to confess I'm not familiar with Lombrado. I have seen Cardenas, in which the Court said very briefly that Booker doesn't apply to mandatory minimums, and that seems to be what Lombrado is saying. But this case is not about carving out an exception to mandatory minimums, which, again, was also the problem that Valencia-Andrade perceived, of course, back in 1995 as to an overstatement on a criminal history argument. This case isn't about that, at least as we see it for Mr. Espinoza. This case isn't about making an exception to a mandatory minimum or ignoring a mandatory minimum. It's about how to apply a safety valve statute that itself already carves out an exception to the application of a mandatory minimum. This Court doesn't have to do anything to make any novel sort of rejection of a mandatory minimum statute, because Congress already did it in the safety valve statute. This case isn't about ignoring a mandatory minimum. It's how to understand what Congress meant when it said that you get a safety valve or you're eligible for a safety valve reduction if you have no more than one criminal history point, quote, as determined under the sentencing guidelines. That already exists. You're not ---- Roberts, Treatment of prior convictions has always been exempt from Booker, right? Right. But this isn't about the fact of a prior conviction, which is the, as the Court has pointed out, the exception here. This isn't about the fact. No one is disputing the facts. Certainly we didn't dispute that Mr. Espinoza had that prior conviction, nor when it occurred, nor any facts about it. What the issue is, is how do you define, quote, as determined under the sentencing guidelines in Section F-1? And when Congress established that statute, as defined under the sentencing guidelines meant as defined under the sentencing guidelines in their mandatory form. But that's not what it means now. It means now, as defined under the sentencing guidelines in their advisory form, because as Justice Breyer wrote in Booker, the sentencing guidelines are advisory as to every case, whether there's a constitutional problem with a judicial fact-finding mechanism or not. The guidelines are advisory as to every single case, because that's what Congress would have intended. And so it's not an issue about the fact of a prior conviction or the effect of a prior conviction. It's how to define as determined under the sentencing guidelines, now that the guidelines are no longer mandatory. Thank you, Your Honor. Roberts. May it please the Court, Adam Braun, appearing for the United States Attorney's Office. Unless the Court prefers otherwise, what I intend to do is first address the safety valve issue, next address Defendant Ledesma's sentencing entrapment issue. And I'll try to do that as briefly as possible. Your opponent stood on the briefs on the entrapment issue. And if the Court prefers that I not address the sentencing entrapment issue, I'm happy to do that. Or if the Court had any questions in that area, then I would be happy to entertain those. And then in terms of the special assessment issue, I would just submit on the briefs on that. Turning to the safety valve issue, first, as Judge Hawkins noted, the sentencing guidelines are not mandatory. There's no reason to believe that Judge Byrne would have sentenced Defendant Ledesma any differently had it believed that this safety valve statute was a discretionary statute. In particular, Judge Byrne sentenced Defendant Ledesma to several years over the mandatory minimum. So if theoretically he believed, he recognized at that point that the guidelines were advisory and not mandatory, and had he wished to sentence below the mandatory minimum, presumably he would have just sentenced Defendant Ledesma to the mandatory minimum. Instead, he indicated in the record that he thought that a sentence of about four years over the mandatory minimum was enough in this particular case. But certainly implicit in that decision is that something above the mandatory minimum was necessary given the various factors in this case. Defendants Avalos and Espinoza are obviously in different cases. Their guideline ranges were below the mandatory minimum, and obviously we recognize that. In terms of congressional intent, which some of the other counsel have pointed to, a number of the cases, both within this circuit and out of the circuit, have found that the plain language of 3553F prohibits courts from imposing a sentence below the mandatory minimum when a defendant has more than one criminal history point. And given what those courts have found to be the plain language and evidencing Congress's intent that that not occur, I don't see how retroactively placing a discretionary overlay on any of the prongs of 3553, let alone 3553F1, the criminal history prong, would at all be consistent with Congress's intent. In fact, Congress took a holistic approach to defendants that it didn't want to see sentenced below the mandatory minimum and to whether to strike one prong and essentially find that it's discretionary and not mandatory would lead to perverse outcomes. Someone who, you know, although they didn't use violence or possess a firearm or do any of the other things that are provided for under 3553F, they had an extensive criminal history, that person would be eligible for sentence below, even though Congress intended that someone of that character not get sentenced to below the mandatory minimum. The courts write in the law. Kennedy. How do we really know what Congress intended? Well, you can look at the plain language of the statute and as interpreted by both this circuit and other circuits, that Congress did not provide for departures in criminal history, and in particular, the safety valve statute doesn't refer to criminal history. I think the Congressmen sat down and the Senators sat down and thought all this thing through and that's what they intended. Well, they could have drafted a statute that says, for example, a defendant that has more than one criminal history point unless a sentencing court finds that the criminal history overstates the seriousness of the person's prior criminal conduct. So, I mean, you could, with three or four words, make clear if you intended to adopt a overstatement or understatement departure regime when determining safety valve eligibility. But now it's all discretionary. What the district court has to do is go through and determine the guideline sentence and then go to 3553 and look at those factors and determine whether or not the person is eligible for that, and then exercise its discretion on what's a reasonable sentence. Well, I think Judge Byrne was right at the sentencing. Isn't that the way it works? In terms of determining what someone's sentencing range is under the guidelines, they do a proper guideline calculation, and then in terms of deciding what the actual sentence is, they are to consider the 3553 factors in pronouncing a particular sentence. But I think Judge Byrne was right in this case at the sentencing hearing when he indicated that the safety valve prong that relates to criminal history is really a mechanical prong. It's calculating the number of criminal history points. It didn't – that regime did not adopt the departure regime that the overall sentencing guidelines always had pre-Booker. I mean, courts could always have – they had the discretion to depart downward not in criminal history points but in criminal history categories if they believed the criminal history category overstated the seriousness of a particular defendant's criminal history. And that obviously then moved what the sentencing range would be that the courts were selecting a sentence from even under the mandatory regime. So what courts would have – what you would have expected to see if what Congress was adopting was a regime more in keeping with the overall structure of the sentencing guidelines, namely not only counting points but also determining whether a departure is appropriate, you would have expected pre-Booker for this and other circuits to find that although courts may not have discretion on imposing the ultimate sentence and departing from the guidelines, they do have discretion to depart downward in criminal history. And, in fact, this circuit decided the exact opposite in Valencia and Drade, where even though the sentencing court believed the defendant's criminal history was overstated and recognized that it had the ability to depart downward in criminal history, this circuit found that that particular departure regime did not apply to the safety valve statute because of the plain language of the statute in Congress's intent. And Labrada-Bustamante and cases decided in other circuits made clear post-Booker that judicial fact-finding in the context of the safety valve statute are permitted and do not violate the Sixth Amendment right. Labrada-Bustamante dealt with not even this area of determining a defendant's criminal history, which has always been recognized by Apprendi and its progeny, but even in the more fact-intensive context of deciding whether a defendant was truthful in a safety valve debrief, this circuit has recognized post-Booker that that's an appropriate area of judicial fact-finding. And given the fact that the traditional view of criminal history as being in the purview of a sentencing court, there would seem to be no reason to make an exception to the general finding of Labrada-Bustamante. And obviously, I've just mentioned passing the Guerrero case out of the Second Circuit and others that have essentially found the same thing, that judicial fact-finding that determines not the maximum sentencing exposure of a defendant, but instead applies to facts that may be used to lower the sentence, don't implicate the Sixth Amendment. Kennedy. So if we accept what you have to say, how does that apply in the real world? Labrada-Bustamante. Well, in terms of safety valve eligibility, each side would make a presentation about whether the defendant meets the various factors, the five factors. Kennedy. And the judge makes the decision. Labrada-Bustamante. And the judge makes the decision. And then that can be obviously reviewed under clearly erroneous standard based on the factual determining. Kennedy. What about the ultimate sentencing? Labrada-Bustamante. The ultimate sentencing, presuming the, if the defendant's sentence is, guideline sentence, say, is above the mandatory minimum, the court, although it could take into consideration the sentencing guideline range, it would be free to sentence the defendant anywhere between the mandatory minimum and the facts authorized, the maximum sentence authorized by the facts in the case, namely the statutory maximum. Kennedy. The court can exercise that discretion, but then just disregard the result of applying these guidelines for the reduction of the sentence. Labrada-Bustamante. Well, no, it wouldn't have the discretion to do that because the sentence, the mandatory minimum sentences are as a result of facts that have been either admitted by the defendant in the context of his plea or found by a jury following a trial. So in this case, the facts that are used that trigger the mandatory minimum are facts of that very nature. Each of the defendants admitted being involved in a conspiracy to distribute 50 grams or more of methamphetamine. Kennedy. I'm saying the court can go below the mandatory minimum. I didn't say that. Labrada-Bustamante. I misunderstood the court's question. But within the, between the mandatory minimum and the statutory maximum or other maximum authorized by the admitted facts, the court would have discretion under 3553 to fashion whatever sentence it believed was appropriate. Kennedy. So we just need the safety valve provision out there accurately computed, and then the court exercises its discretion and can still sentence the mandatory minimum? Labrada-Bustamante. Can still sentence the mandatory minimum, absolutely. So Judge Byrne with Defendant Ledezma, as he recognized, could have sentenced at the mandatory minimum, although he chose to do so for other reasons, to impose a sentence higher than that. But certainly he had full discretion under 3553 to fashion an appropriate sentence between the mandatory minimum and the statutory maximum. Kennedy. I thought somewhere I recall that he did look at the 3553 factors. He did. He acknowledged that he considered those and articulated. Where's that in the record now? One moment, Your Honor. I thought I had marked that. I couldn't find it. You know what? Those sites didn't make it into this outline when I cut it out, but I'd be happy to provide. Why don't you provide the courtroom deputy with the citation before you leave today? Sure. But Judge Byrne did acknowledge, and this is in the transcript of the sentencing hearing that appears at pages 89 through 157 of the government's excerpt of record, that he recognized that the guidelines were advisory now, that he retained full discretion. And then he made various factual findings, including the fact that he believed Defendant Ledezma was the main player and various other things that led him to impose a sentence above the mandatory minimum. Okay. You have that transcript with you? I don't have the transcript with me, Your Honor, but that is the site. It's in the government's excerpt of record at pages 89 through 157. Well, you give us the specific page. That's a lot of pages. He discusses Defendant Ledezma's sentence at pages 120 through 145 of the excerpt of record and then pronounces sentence at pages 150 through 152. Did he put that in the sentencing order? He did put that in the sentencing order, Your Honor. Do you know where? Just a second. Page 10 of the order. Page 10. What line? Yeah, okay. All right. And if there's no further questions on the issue of safety valve at this time, I don't know if the Court has any questions that it would like me to address in the area of sentencing treatment, but I'm happy to do so. Okay, thanks. Thank you. Rebuttal. As you're getting up, let me just mention for counsel that this panel doesn't have priority on this issue, that is, whether Booker affects the ability of a district court judge in safety valve and your co-counsel. These are all United States versus Cardenas, Juarez argued on October 16th. That's 05-302-50. Hernandez 05-509-20 argued October 17 and Figueroa 05-506-54 argued 10-17. So you may want to track, just track those cases on the court's website. Sorry. Okay. Your Honor. And those cases have priority on this issue. We're going to have to wait and see what the case that has priority comes down to. I understand, Your Honor. The co-counsel has stated that the relevant portions of the sentencing transcript is page 50-64 and also on the court's order on page 10. And I just wanted to briefly go back to this issue. I think, first of all, the Labrada-Bustamante case, I believe they were talking about Apprendi and Blakely and not Booker. And here we have a separate issue aside from this whole constitutional issue, and that is that the Supreme Court said the guidelines were advisory. And so it's almost like a technical question as opposed to, you know, the whole Apprendi-Blakely issue. Because, you know, under the safe-developed provisions, it says Criminal History 0.1 as determined by the sentencing guidelines, and yet now the sentencing guidelines are advisory. And so it's the defendant's position that considering the cases after Booker and considering that the court has to take into consideration all the 3553 factors and the fact that the guidelines are clearly advisory now, it's quite possible for the court to say, and the court has discretion to say, that the criminal history point was overstated. Here's what the circuits that have ruled today, here's their sort of three-point rationale, and I'd like you to tell us how you think this is wrong. They say, one, that when the court entertains this configuration, it's not actually imposing a guideline sentence. It's simply using the guidelines to determine safety valve eligibility. That's point one. Point two is, even after Booker, as Judge Pragerson has pointed out, the court is still required to calculate what the sentence would have been under the guidelines. And three, there's always been an exception following Apprendi to the treatment of prior convictions. Now, what's wrong with all or any of those rationales? Okay. Well, first of all, it's just, like I said, it's kind of a strange technical issue now, because aside from the fact of whether, you know, Apprendi applies, you know, et cetera, and the constitutional issue, we have the Supreme Court that said the guidelines were advisory. And therefore, if they're advisory, then the district court should have discretion to determine, make a determination as to criminal history points in regards to reducing it. If that argument were correct, it would be a constitutional violation to calculate the sentence under the guidelines, right? And it's clearly not. Well, it to hold any of the guidelines as mandatory, it is. And also in regards to the Apprendi exception, actually, I think Apprendi is narrowly tailored, and they're just talking about fact of a prior conviction. But we're not talking about fact of a prior conviction. We're actually talking more or less about the weight that you give to the criminal history. It's not the fact that whether the defendant had, you know, had a conviction, because that's why the whole Apprendi exception came about, is that that's an easy fact that a judge can decide, because, you know, you just look at the certified copies of the judgment or whatever, and you know he had one, a prior conviction or he didn't. But when we're talking about the criminal history, we're talking about, you know, kind of the number of points you want to give it, the weight. So under your theory, the district court would refer to the guidelines initially to determine. Right, and make the proper calculations. You don't say five when it's, you know, one. I mean, obviously, you make the proper calculations. But then let's just, in this case, let's assume hypothetically the district court says, okay, I've looked at the guidelines, and I believe there's two criminal history points. Right. At that point, is the district court free to ignore that? Well, right, because it's advisory. The district court could say, but it's overstated. Therefore, you know, I'm reducing it a point. That's the argument, because they're not mandatory anymore. And to say that the guidelines are mandatory turns into a constitutional issue. So. No, no, they calculate. You're supposed to compartmentalize this. You calculate under the guidelines what the guideline sets would be. The Supreme Court has not made this easy for anybody. The whole thing has been advisory. I mean, that's the, you do the calculations. That's advisory. Then you go to 3553, and you think about all this, and then you come up with a sentence. Exactly. And that, yes, that's the whole point. And the fact is, yes, you look at the criminal history point, you compute it correctly, but then the judge can say, but look, I know the defendant. I know his characteristics. I think this is too weighty for him. So I can reduce the criminal history. Is that exactly what he did? He did. He reduced it to a two. But since, you know, considering how, like I said, how advisory this whole thing is, he didn't reduce it to one to make the safety of our provisions apply, because he felt he had no discretion. But you want him to exercise his discretion in reducing it when he's thinking about the guideline range. But then he can exercise his discretion when he's looking at 3553. Well, it's not that we're saying that the safety of our provisions are, you know, that's a statutory provision. We're not saying that's advisory, but it's just the weight you give to the criminal history, which says, as determined by the sentencing guidelines, that part is advisory. He can calculate it correctly, and then he can the judge can decide, I'm going to give it a one. I'm going to reduce it. I'm going to reduce it a point. I don't know. That doesn't seem like what the regimen is to me. You're supposed to figure out what it is, and then you exercise your discretion. So he gives it a one, and he can exercise his discretion again. Is that what you're saying? Right. After he determines, he calculates, it's, you know, a two or three, whatever. Then he says, but that's too much weight to give to this criminal history, so I'm going to reduce it and turn it into a one. Then he takes care of that when he exercises his discretion. So that goes to the argument that safety of our provisions don't apply to mandatory minimums, so there's no discretion. The district court did have discretion, and there's the error, because the district court did not think it had discretion, and it did. And I better leave some time for the other defendants. Thank you. We're over our time, so you've got to move quickly. Thank you, Your Honor. A general comment, Your Honor, on the three rationales that other courts have used. I think we've addressed the prior conviction ones, and whether you have to calculate the guidelines correctly, and whether you have to impose a guideline sentence is or that you're not imposing a guideline sentence is what I'd like to address. We've been focusing on subsection F1 today, but subsection F generally says that if the district court finds that a defendant does qualify for the safety valve provision, then it says the court shall impose a guideline sentence. What does that mean now? There are some district courts that say that it means that you have to impose an advisory guideline sentence. And I recognize that this Court, this panel may not reach that issue today, but I raise the question because I think that it's important for the Court to consider both of those provisions in deciding what either or both of them mean, because it has to be consistent in this respect. If shall impose a guideline sentence means, but not really, then as determined under the sentencing guidelines, one criminal history point also has to mean in a nonmandatory way. And that's the last point that I would offer for the Court's consideration. Thank you. All right. I guess you got something to say? No. All right. Thank you very much for the argument. We appreciate it. And the matter stands submitted. And now we go to number two, Galstian. It's submitted. Oh, that's submitted. Boyer's next.
judges: Pregerson, Hall, Hawkins